UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO. 0:22-cv-60314-RAR

ROGER TAYLOR, JOHN TAYLOR,
SIMON LE BON, and NICHOLAS RHODES,

    Plaintiffs,

v.

THE INDIVIDUALS, PARTNERSHIPS AND
UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE "A,"

    Defendants.
_____/

**PLAINTIFFS' *EX PARTE* MOTION FOR ORDER AUTHORIZING
ALTERNATE SERVICE OF PROCESS ON DEFENDANTS**

Plaintiffs, Roger Taylor, John Taylor, Simon Le Bon, and Nicholas Rhodes (collectively "Plaintiffs"), by undersigned counsel and pursuant to Fed. R. Civ. P. 4(f)(3), respectfully move on an *ex parte* basis for an order authorizing alternate service of process on Defendants, the Individuals, Partnerships, and Unincorporated Associations identified on Schedule "A" to the Amended Complaint ("Defendants"), and in support thereof respectfully refers the Court to the following Memorandum of Law.

**MEMORANDUM OF LAW**

**I.    INTRODUCTION**

Plaintiffs are moving for alternate service *ex parte* as Plaintiffs have yet to provide Defendants with notice of this action. *See* accompanying Declaration of Richard Guerra ("Guerra Decl.") at ¶ 3. Plaintiffs filed their *Ex Parte* Motion for Temporary Restraining Order, Preliminary Injunction, and Order Restraining Transfer of Assets ("Motion for TRO"), which is currently

pending before the Court. Plaintiffs are submitting this Motion so that, if the Court is inclined to grant the Motion for TRO, Plaintiffs can effectuate service of process pursuant to Rule 4 of the Federal Rules of Civil Procedure simultaneously with notice of the Court's Order on the Motion for TRO. This Motion is directed to all Defendants identified on Schedule "A" to the Amended Complaint that are residing and/or operating outside of the United States.

Plaintiffs are suing Defendants for false designation of origin, common law unfair competition, and common law trademark infringement. Defendants are knowingly and intentionally promoting, advertising, distributing, offering for sale, and selling goods bearing counterfeits and infringements of Plaintiffs' trademarks within this district and throughout the United States by operating websites and ecommerce stores via third-party marketplace platforms under their seller identification names and website domains identified on Schedule "A" to the Amended Complaint (the "Seller IDs").

Pursuant to Fed. R. Civ. P. 4(f)(3), Plaintiffs request an order authorizing service of process on Defendants via electronic mail ("e-mail") and via website posting. Service via e-mail and by posting on a designated website are appropriate and necessary in this case, because (1) Defendants operate via the Internet; and (2) Defendants rely on electronic communications to operate their businesses. As such, Plaintiffs can contact Defendants directly and provide notice of Plaintiffs' claims against them electronically via email. Additionally, Plaintiffs have created a website and will be posting copies of the Complaint and all other documents filed in this action.

Plaintiffs respectfully submit that an order allowing service of process and service of all filings via e-mail and by posting on a designated website in this case will benefit all parties and the Court by ensuring Defendants receive immediate notice of the pendency of this action and allowing this action to move forward expeditiously. Absent the ability to serve Defendants by e-

mail and/or by website posting, Plaintiffs will almost certainly be left without the ability to pursue a remedy.

## II.     FACTUAL BACKGROUND

### A.     Defendants Have Valid Means of Electronic Contact.

Defendants operate Internet-based businesses and identify e-mail, including onsite contact forms, as a means of communication such that Plaintiffs will be able to provide Defendants with notice of this action via e-mail and website posting.  As a practical matter, it is necessary for merchants who operate entirely online, such as Defendants, to provide customers with a valid electronic means by which customers may contact the merchants to ask questions about the merchants' products, place orders from the merchants, and receive information from the merchants regarding the shipments of orders.  Moreover, e-commerce defendants generally must maintain accurate e-mail addresses where their marketplace platform administrator or domain registrar and payment processor may communicate with them regarding issues related to the maintenance of their e-commerce store and domain name accounts and transfer of funds for the payment for goods. Additionally, Plaintiffs have created a serving notice website that will be appearing at the URL, https://www.dropbox.com/sh/tyneplze4bzmww9/AACgYLlumK3ekWLIEl8AL_-pa?dl=0 ("Plaintiffs' Serving Notice Website") such that anyone accessing the Plaintiffs' Serving Notice Website will find copies of all documents filed in this action.  *See* Guerra Decl. at ¶ 4.  Defendants are further able to receive notice of this action by e-mail via the e-commerce marketplace platform that Defendants use to conduct their commercial transactions via the Seller IDs.  Guerra Decl. at ¶ 5.

Plaintiffs will also be able to provide each Defendant notice of this action via public announcement on Plaintiffs' designated website.  Plaintiffs have created a publication website that

will be appearing at the URL https://www.dropbox.com/sh/tyneplze4bzmww9/AACgYLlumK3ekWLIEl8AL_-pa?dl=0, whereon copies of the Complaint and all other pleadings, documents, and orders issued in this action will be posted such that anyone accessing Plaintiffs' Serving Notice Website will find copies of all documents filed in this action. *See* Guerra Decl. at ¶ 6. The address to Plaintiffs' Serving Notice Website will be provided to Defendants via e-mail to Defendants' known e-mail accounts and onsite contact forms and will be included upon service of process in this matter. *Id*.

Accordingly, each Defendant will receive notice of this action electronically by providing the address to Plaintiffs' Serving Notice Website to their corresponding e-mail addresses or via the e-commerce marketplace platform or domain registrar Defendants use to conduct their commercial transactions via the Seller IDs. *See* Guerra Decl. at ¶ 7. In this manner, Defendants will receive a web address at which they can access all electronic filings to view, print, or download any document filed in the case similar to the court's CM/ECF procedures. *Id*.

**B.    Defendants Rely on Electronic Communications.**

Defendants have structured their e-commerce store businesses so that the means for customers to purchase Defendants' counterfeit and infringing goods at issue is by placing an order electronically. Defendants take and confirm orders online and rely on electronic means to receive payment. *See* Guerra Decl. at ¶ 8.

Further, in most instances, Defendants must provide an email address and physical address to the third-party platforms through which Defendants operate (*e.g.*, eBay, AliExpress, Alibaba, Amazon, Wish.com, Dhgate, etc.). *Id*. at ¶ 9. Few, however, if any Defendants purport to provide any type of a physical address to these third-party platforms much less a valid, accurate, and verifiable physical address. *Id*. at ¶ 10. Unlike an email address, which is typically verified by the

third-party online platforms, no verification typically occurs for physical addresses. *Id*. at ¶ 11. Because an Internet store operator can often input any physical address, such addresses are usually false and/or are not where the Internet store operator is located. *Id*. at ¶ 12. As such, even if a physical address is discoverable, it is not a reliable means for identifying and locating Defendants. *Id*. at ¶ 13.[1]

### III. ARGUMENT

Pursuant to Federal Rule of Civil Procedure 4(h)(2), a foreign partnership or other unincorporated association may be served with process in any manner prescribed by Rule 4(f) for serving foreign individuals. Federal Rule of Civil Procedure 4(f)(3) allows a district court to authorize an alternate method for service to be effected upon a foreign defendant, provided that it is not prohibited by international agreement and is reasonably calculated to give notice to the defendant. In the present matter, alternate service of process via e-mail and by posting on Plaintiffs' Serving Notice Website are appropriate given that Defendants have established Internet-based businesses by which they rely on electronic communications for their operation. Accordingly, this Court should permit service on Defendants by e-mail and website posting.

    **A.    The Court May Authorize Service via E-mail and Website Posting Pursuant to Fed. R. Civ. P. 4(f)(3).**

Federal Rules of Civil Procedure 4(h)(2) allows a foreign business entity to be served with process "in any manner prescribed by Rule 4(f)," including any manner ordered under Rule 4(f)(3)." *U.S. Commodity Futures Trading Comm'n v. Aliaga*, 272 F.R.D. 617, 619 (S.D. Fla. 2011). A foreign partnership or other unincorporated association can therefore be served in the

---

[1] Indeed, a January 2020 publication on counterfeiting by the Department of Homeland Security ("DHS") cites a "lack of relevant policies and procedures to verify sellers' true names and addresses" by third party platforms, which "contributes to a range of impediments to effective enforcement." Guerra Decl. at ¶ 14.

same manner as serving a foreign individual pursuant to Fed. R. Civ. P. 4(f)(3). *Id.* Rule 4(f)(3) allows alternative methods for service of process, so long as those methods are not prohibited by international agreement and are directed by the Court. *See Prewitt Enterprises, Inc. v. The Organization of Petroleum Exporting Countries*, 353 F.3d 916, 923 (11th Cir. 2003); *see also Brookshire Bros., Ltd. v. Chiquita Brands Intern., Inc.*, Case No. 05-cv-21962, 2007 WL 1577771, at *2 (S.D. Fla. May 31, 2007); *Rio Properties, Inc., v. Rio Intern. Interlink*, 284 F.3d 1007, 1014 (9th Cir. 2002). In fact, "as long as court-directed and not prohibited by an international agreement, service of process ordered under Rule 4(f)(3) may be accomplished in contravention of the laws of the foreign country." *Chanel, Inc. v. Zhixian*, No. 10-cv-60585-JIC, 2010 WL 1740695, at *2 (S.D. Fla. April 29, 2010) (quoting *Rio Props., Inc.*, 284 F.3d at 1014 and citing *Mayoral–Amy v. BHI Corp.*, 180 F.R.D. 456, 459 n. 4 (S.D. Fla. 1998)).

The plain language of Rule 4(f)(3) reflects that the decision to issue an order allowing an alternate means of service lies within the sole discretion of the district court. *Prewitt Enters., Inc.*, 353 F.3d at 921; *Rio Props., Inc.*, 284 F.3d at 1116; *Brookshire Bros., Ltd.*, 2007 WL 1577771, at *2 (noting that "district courts have broad discretion under Rule 4(f)(3) to authorize other methods of service"); *In re Int'l Telemedia Assocs.*, 245 B.R. 713, 720 (N.D. Ga. 2000) (noting that Rule 4(f)(3) is designed to allow courts discretion and broad flexibility to tailor the methods of service for a particular case). Rule 4 does not require a party attempt service of process by those methods enumerated under subsections (f)(1) and (f)(2), including by diplomatic channels and letters rogatory, before petitioning the court for alternative relief under subsection 4(f)(3). *Rio Props., Inc.*, 284 F.3d at 1114-15; *Brookshire Bros., Ltd.*, 2007 WL 1577771, at *1. For example, in *Brookshire*, this Court allowed substitute service on a party's attorney pursuant to Rule 4(f)(3) holding as follows:

> Rule 4(f)(3) is one of three separately numbered subsections in Rule 4(f) and each subsection is separated from the one previous merely by the simple conjunction 'or.' Rule 4(f)(3) is not subsumed within or in any way dominated by Rule 4(f)'s other subsections; it stands independently, onequal footing. Moreover, no language in Rules 4(f)(1) or 4(f)(2) indicates the primacy, and certainly Rule 4(f)(3) indicates no qualifiers or limitations which indicate its availability only after attempting service of process by other means.

*Brookshire Bros., Ltd.*, 2007 WL 1577771, at *1 (quoting *Rio Props., Inc.*, 284 F.3d at 1015); *accord TracFone Wireless, Inc. v. Bitton*, 278 F.R.D. 687, 692 (S.D. Fla. Jan 11, 2012) (noting that, in regards to Rule 4(f)(3), "there is no indication from the plain language of the Rule that the three subsections, separated by the disjunctive 'or,' are meant to be read as a hierarchy."). In *Brookshire*, this Court further held, "[t]he invocation of Rule 4(f)(3), therefore, is neither a last resort nor extraordinary relief." *Brookshire Bros., Ltd.*, 2007 WL 1577771, at *2. Additionally, the Constitution itself does not mandate that service be effectuated in any particular way. Rather, Constitutional due process considerations require only that the method of service selected be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* at *1 (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)); *see also TracFone Wireless, Inc.*, 278 F.R.D. at 692; *Rio Props., Inc.*, 284 F.3d at 1016. Accordingly, federal courts have allowed a variety of alternative service methods, including service by e-mail and service by posting on a designated website, where a plaintiff demonstrates the likelihood that the proposed alternative method of service will notify a defendant of the pendency of the action. *See, e.g., Rio Props., Inc.*, 284 F.3d at 1017 (holding, "without hesitation," that e-mail service of an online business defendant "was constitutionally acceptable"); *In re Int'l Telemedia Assocs.*, 245 B.R. at 721 ("If any methods of communication can be reasonably calculated to provide a defendant with real notice, surely those communication channels utilized and preferred by the defendant himself

must be included among them."); *National Association for Stock Car Auto Racing, Inc. v. Does*, 584 F. Supp. 2d 824, 826 (W.D.N.C. 2008) ("acknowledging the realities of the twenty-first century and the information age, the Court determined that the most appropriate place for publication was [Plaintiffs' website].").

Here, service on Defendants by e-mail and by posting on Plaintiffs' Serving Notice Website will satisfy due process by apprising them of the action and giving them the opportunity to answer Plaintiffs' claims. Based upon Plaintiffs' investigation, each Defendant utilizes e-mail as its principal means of contact, demonstrating that this means of contact is not just effective, but the most reliable means of communicating with that Defendant, and consequently, the most reliable means of providing Defendants with notice of this action. *See* Guerra Decl. at ¶ 15. Moreover, service by posting on Plaintiffs' Serving Notice Website will be an additional source of reliability as Defendants will be able to see copies of the Complaint and all other documents in this matter electronically via their Internet browser. *Id.* at ¶ 16.

E-mail service on an online business defendant is appropriate and constitutionally acceptable in a case such as this when a Plaintiffs have proven that e-mail is the most effective means of providing a defendant notice of the action. *See Rio Props., Inc.*, 284 F.3d at 1017 (concluding "not only that service of process by e-mail was proper—that is, reasonably calculated to apprise [the defendant] of the pendency of the action and afford it an opportunity to respond— but in this case, it was the method of service most likely to reach [the defendant]."); *see also Popular Enterprises, LLC v. Webcom Media Group, Inc.*, 225 F.R.D. 560, 562 (E.D. Tenn. 2004) ("Under the facts and circumstances presented here, Rule 4(f)(3) clearly authorizes the court to direct service upon defendant by e-mail. The rule is expressly designed to provide courts with broad flexibility in tailoring methods of service to meet the needs of particularly difficult cases.

Such flexibility necessarily includes the utilization of modern communication technologies to effect service when warranted by the facts.") (citation omitted).  In both *Rio Properties* and *Popular Enterprises*, the district courts determined e-mail service to be appropriate, in part, because, as in this case, the defendants conducted their business online, used e-mail regularly in their business, and encouraged parties to contact them via e-mail.  *See id.*

A number of other district courts have similarly held that alternate forms of service pursuant to Rule 4(f)(3), such as e-mail service, are appropriate and may be the only means of effecting service of process when faced with an international e-business counterfeiting scheme. *See Chanel, Inc.*, 2010 WL 1740695, at *3 (e-mail service "reasonably calculated to notify Defendants of the pendency of this action and provide him with an opportunity to present objections."); *TracFone Wireless, Inc.*, 278 F.R.D. at 693 (finding that service of process by e-mail was reasonably calculated to apprise the defendants of the action and give it an opportunity to respond); *In re Int'l Telemedia Associates*, 245 B.R. at 722 (concluding e-mail and facsimile service to be appropriate and holding that a "defendant should not be allowed to evade service by confining himself to modern technological methods of communication not specifically mentioned in the Federal Rules. Rule 4(f)(3) appears to be designed to prevent such gamesmanship by a party."); *Chanel, Inc. v. Zhibing,* Case No. 09-cv-02835, 2010 WL 1009981, at *4 (W.D. Tenn. March 17, 2010) (granting alternate service via e-mail, stating that e-mail service has the "greatest likelihood" of reaching e-commerce merchants, and noting "[t]he federal judiciary's own CM/ECF system alerts parties … by e-mail messages").

The foregoing authority demonstrates that allowing e-mail service in the present case is appropriate and comports with constitutional notions of due process, particularly given

9

Defendants' decisions to conduct their illegal businesses using the Internet and utilizing e-mail as a primary means of communication.

Additionally, service of a defendant by posting on a designated website has been deemed an appropriate means of service by posting. See *National Association for Stock Car Auto Racing*, 584 F. Supp. 2d at 826.  A proposed method of website posting need only be "reasonably calculated under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *National Association for Stock Car Auto Racing*, 584 F. Supp. 2d at 826 (citing *Mullane*, 339 U.S. 306, 315-16).  In *National Association for Stock Car Auto Racing, Inc.*, the district court determined that the plaintiff could serve "Doe" defendants and apprise those defendants of a pending preliminary injunction hearing by posting on the Plaintiffs' website.  *Id.*  This Court has also consistently approved of this method of service in similar cases.  *See, e.g., Richemont Int'l SA v. Cartierlove2u.com*, No. 19-cv-61968, 2019 WL 7938516 (S.D. Fla. Aug. 8, 2019) (Order authorizing alternate service of process via, inter alia, e-mail); *Adidas AG v. Adidas.style*, No. 17-cv-62535, 2018 WL 1801197 (S.D. Fla. Feb. 7, 2018) (same).

Accordingly, Plaintiffs have created their serving notice website which will be appearing at the URL, https://www.dropbox.com/sh/tyneplze4bzmww9/AACgYLlumK3ekWLIEl8AL_-pa?dl=0, whereon copies of the Complaint, and all other pleadings, documents, and orders issued in this action will be posted. *See* Guerra Decl. at ¶ 6.  The address to Plaintiffs' Serving Notice Website will be provided to each Defendant via their e-mail accounts and will be included as part of service of process in this matter.  *Id.*  Posting the Summonses and Complaint on Plaintiffs' Serving Notice Website will provide notice to Defendants sufficient to meet the due process requirements for service

of process and notice pursuant to Fed. R. Civ. P. 4, apprise Defendants of the pendency of this action, and afford Defendants and any other interested parties an opportunity to present their objections.

      **B.**     **Service of Process Via Electronic Means Are Not Prohibited by International Agreement.**

Service via e-mail and via posting on a designated website is not prohibited by international agreement. Based upon the data provided in connection with Defendants' Internet based e-commerce stores, including the shipping information and payment data provided in connection with Defendants' Seller IDs, Plaintiffs have good cause to suspect the majority of Defendants are residing and/or operating in the People's Republic of China[2] ("China") and/or redistribute products from sources in China. *See* Guerra Decl. at ¶ 17.

The United States and China are signatories to the Hague Convention on the Service Abroad of Judicial and Extra-Judicial Documents in Civil and Commercial Matters (the "Hague Service Convention"). *See id.* at ¶ 18. The Hague Service Convention does not preclude a U.S. district court from authorizing service of process via e-mail or posting on a designated website. *Id.* Thus, there are no international agreements prohibiting service by e-mail or posting on a designated website. *Id.*

Alternative means of service, such as e-mail and website posting, are not prohibited by the Hague Service Convention where a signatory nation has not expressly objected to those means. *See Stat Med. Devices, Inc. v. HTL-Strefa, Inc.*, No. 15-cv-20590-FAM, 2015 WL 5320947, at *3 (S.D. Fla. Sept. 14, 2015) (noting that an objection to the alternative forms of service set forth in

---

[2] With respect to those Defendants residing outside of China, undersigned counsel has confirmed that there are no jurisdictions at issue that are signatories to an international treaty precluding service by email. Further, while some of these jurisdictions have objected to Article 10 of the Convention (like China), the same analysis set forth herein is equally applicable to these other jurisdictions.

the Hague Convention is limited to the forms of service expressly objected to); *see also Richemont Int'l SA v. Cartierlove2u.com*, No. 19-cv-61968-DIMITROULEAS, 2019 WL 7938516, at * 1 (S.D. Fla. Aug. 9, 2019) (authorizing e-mail service and by posting on Plaintiff's designated website, noting an objection to the alternative means of service provided by the Hague Convention is expressly limited to those means and does not represent an objection to other forms of service, such e-mail or website posting).

Article 10 to the Hague Service Convention allows service of process through means other than a signatory's Central Authority, such as "postal channels" and "judicial officers," provided the State of destination does not object to those means. *See* Hague Convention, Art. 10, 20 U.S.T. 361 (1969). China has objected to the alternative means of service outlined in Article 10 of the Convention. *See* Guerra Decl. at ¶ 19. However, China's objection is specifically limited to the means of service enumerated in Article 10, which do not include service via email or website posting. *Id.* Because the declarations to the Hague Convention filed by China do not object to e-mail and website posting service, "a court acting under Rule 4(f)(3) remains free to order alternative means of service that are not specifically referenced in Article X." *Gurung v. Malhotra*, 279 F.R.D. 215, 219 (S.D.N.Y. 2011) (citations omitted); *see also WhosHere, Inc. v. Orun*, No. 13-cv-00526-AJT, 2014 WL 670817, at *3 (E.D. Va. Feb. 20, 2014) (authorizing e-mail service, noting objection to means of service listed in Article 10 "is specifically limited to the enumerated means of service in Article 10.").

Moreover, an objection to the alternative means of service provided in Article 10 does not represent a per se objection to other forms of service, such as e-mail or website posting. *See In re S. African Apartheid Litig.*, 643 F. Supp. 2d 423, 434 & 437 (S.D.N.Y. 2009) (requiring express objection to alternative method of service by signatory nation to preclude that particular means of

service). Consequently, China's objection to the means of alternative service provided in Article 10 does not prevent this Court from authorizing alternative service of process via e-mail or website posting. *See, e.g., Gurung*, 279 F.R.D. at 220 (approving service of process on foreign defendants via e-mail despite India's objection to Article 10, stating that an "objection to service through postal channels does not amount to an express rejection of service via electronic mail."); *Stat Med. Devices, Inc.*, 2015 WL 5320947, at *8-9 (permitting service of process on foreign defendants via e-mail despite Poland's objection to Article 10, noting "[t]his Court and many other federal courts have permitted service by electronic mail and determined that an objection to Article 10 of the Hague Convention . . . does not equate to an express objection to service via electronic mail."); *F.T.C. v. PCCare247 Inc.*, No. 12-cv-7189-PAE, 2013 WL 841037, at *4 (S.D.N.Y. March 7, 2013) (authorizing service of process via e-mail and Facebook, explaining that "[n]umerous courts have held that service by e-mail does not violate any international agreement where the objections of the recipient nation are limited to those means enumerated in Article 10"); *WhosHere, Inc.*, 2014 WL 670817 (authorizing service of process on foreign defendants via e-mail despite Turkey's objection to Article 10); *Richmond Techs., Inc. v. Aumtech Bus. Solutions*, No. 11-cv-02460-LHK, 2011 WL 2607158, at *2 (N.D. Cal. July 1, 2011) ("[N]umerous courts have authorized alternative service under Rule 4(f)(3) even where the Hague Convention applies. This is true even in cases involving countries that, like India, have objected to the alternative forms of service permitted under Article 10 of the Hague Convention.").

### IV.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request this Court grant the present motion

and authorize service of the Complaint, Summons,[3] and all pleadings and discovery in this matter upon each Defendant in this action: (1) via e-mail by providing the address to Plaintiffs' designated serving notice website to Defendants via the e-mail accounts provided by the e-commerce platform associated with each of the Seller IDs, and (2) via website posting by posting a copy Summons, Complaint, and all filings in this matter on Plaintiffs' Serving Notice Website appearing at the URL https://www.dropbox.com/sh/tyneplze4bzmww9/AACgYLlumK3ekWLIEl8AL_-pa?dl=0.

| | |
|---|---|
| Date:   February 17, 2022 | Respectfully submitted by, |
| | THE BRICKELL IP GROUP, PLLC<br>1101 Brickell Avenue<br>South Tower, Suite 800<br>Miami FL, 33131<br>Tel: 305-728-8831<br>Fax: 305-428-2450 |
| | /s/ *Nicole Fundora*<br>Richard Guerra<br>Fla. Bar No. 689521<br>Email: rguerra@brickellip.com<br>Nicole Fundora<br>Fla. Bar No. 1010231<br>Email: nfundora@brickellip.com<br>*Counsel for Plaintiff* |

---

[3] The proposed TRO includes language providing authorization to serve Defendants electronically and provides for issuance of a single original summons in the name of the first named defendant and "all other Defendants identified in Schedule 'A' of the Complaint" that shall apply to all Defendants in accordance with Federal Rule of Civil Procedure 4(b). The Advisory Committee Notes to the 1993 Amendment to Rule 4(b) states, "If there are multiple defendants, the plaintiff may secure issuance of a summons for each defendant, or may serve copies of a single original bearing the names of multiple defendants if the addressee of the summons is effectively identified." Fed. R. Civ. P. 4(b) advisory committee notes (1993).